**Richard Lawrence HAGER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–537.**

Court of Criminal Appeals of Oklahoma.

June 21, 1983.

Robert H. Galbraith, Ponca City, for appellant.

Jan Eric Cartwright, Atty. Gen., State of Okl., Patrick W. Willison, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Richard Lawrence Hager was tried and convicted of Murder in the First Degree in Case No. CRF–76–196 in the District Court of Kay County, for which he received the death penalty. On appeal, this Court re-

versed and remanded for a new trial. *Hager v. State,* 612 P.2d 1369 (Okl.Cr.1980). The appellant was subsequently convicted of the crime of Murder in the First Degree in Case No. CRF–80–63 in the District Court of Noble County. At the conclusion of the second stage of the trial, the jury was unable to reach a unanimous verdict, and the trial judge imposed a sentence of life imprisonment. The pertinent facts of this case are set forth in *Hager, supra.*

■ The appellant first asserts that the trial court erred in overruling his motion for a court-funded private investigator and an independent psychiatrist. The trial courts of this State are under no obligation to provide such services to indigent defendants at state expense. *United States v. Baldi,* 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953); *Goforth v. State,* 644 P.2d 114 (Okl.Cr.1982); *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980), reversed on other grounds, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Other than general statements regarding the availability of private investigators to wealthy defendants, the appellant has failed to demonstrate any specific need for either one or that any prejudice resulted from the overruling of his motion. This proposition of error is without merit.

■ The appellant's second assignment of error is that it was a denial of his Sixth Amendment right to counsel for the trial court to overrule his motion to participate in the trial as co-counsel. Counsel for the appellant raised this motion prior to trial, but did not include it as an assignment of error in his motion for new trial. Such omission waives any error not fundamental. *Hawkins v. State,* 569 P.2d 490 (Okl.Cr. 1977). Upon a reading of the entire record, we find that the overruling of the motion did not deny the appellant his right to participate fully in his own defense, but merely restricted his ability to participate as counsel in examining witnesses and making arguments before the jury. There is no con-

stitutional right to representation partially pro se and partially by counsel. *Bowen v. State,* 606 P.2d 589 (Okl.Cr.1980).

■ The appellant did not attempt to waive representation by his counsel, nor has he shown this Court that any prejudice resulted from his inability to participate as co-counsel in his trial. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) is inapposite since counsel was not forced upon him at a time when he had elected to represent himself. As this Court recently said in *Faulkner v. State,* 646 P.2d 1304 (Okl.Cr.1982) at 1309:

> One may not both represent himself and at the same time have court-appointed counsel. One or the other must be in charge of the defense in order to preserve orderly procedure. *Smith v. State,* 521 P.2d 832 (Okl.Cr.1974).

Therefore, we find this assignment of error to be without merit.

■ The appellant's third proposition of error is that the trial court should have sustained his motion to select a second jury to assess punishment, arguing that a "death-qualified" jury selected in the first stage of a bifurcated capital case creates a conviction prone jury. Title 21 O.S.1981, § 701.10 provides that the sentencing stage of the trial shall be conducted before the trial jury, prohibiting the selection of two separate juries. Contrary to the appellant's arguments, *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) does not mandate the selection of two separate juries for a bifurcated trial. The appellant cites one study from the University of California [1] in support of his contention that a "death-qualified" jury is necessarily a conviction prone jury, but otherwise provides no evidence whatsoever of prejudice or bias on the part of the jury actually selected. This proposition of error is without foundation. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 29 L.Ed.2d 797 (1968); *Witherspoon, supra,* 391 U.S. n. 10,

1. Haney, *Death Qualification As A Biasing Legal Process,* Death Penalty Rep., Vol. 1, 10 (June, 1981).

at 545–56, 88 S.Ct. n. 10, at 1790; *Bloxham v. State,* 600 P.2d 341 (Okl.Cr.1979); *Sanders v. State,* 556 P.2d 611 (Okl.Cr.1976).

The appellant next argues that the trial court committed error in denying his motion to restrict the District Attorney's conduct or bar him from the courtroom during voir dire. The District Attorney had disqualified himself from the trial due to a conflict of interest and two special prosecutors were assigned to try the case. The appellant contends that the District Attorney's "brooding presence" in the courtroom was like a "dark cloud hanging over this judicial process", causing the jurors to be intimidated and prejudiced against the appellant. The appellant asked that the court order the District Attorney to cease talking with or furnishing any assistance whatsoever to the special prosecutors.

 The trial court properly noted that it had neither the authority nor the inclination to restrict consultation and assistance on the part of either counsel for the defense or for the State, and that the District Attorney was not sitting at counsel table but was merely present in open court. The appellant cites no authority for his proposition, nor does he allege any harm or prejudice actually occurred. *Wacoche v. State,* 644 P.2d 568 (Okl.Cr.1982); *Ward v. State,* 628 P.2d 376 (Okl.Cr.1981).

 The appellant's fifth assignment is that the trial court erred in allowing evidence concerning the abandonment of Royce Rasco's pickup and the removal of several items from it. The items introduced into evidence are a C.B. radio, two whip antennas, a .22 rifle, stereo, and C.B. speakers. With the exception of the C.B. itself, all of the items were recovered either from the scene of the arrest or from the home of the appellant's parents in Enid. The appellant argues that because of his confession and the eyewitness testimony of Billy Brown, the introduction of these items into evidence was merely cumulative and

more prejudicial than probative. We disagree. Billy Brown was an accomplice to the murder of Tony Corley. Although Brown's testimony was certainly admissible, independent corroboration of an accomplice's testimony must be had before a conviction can stand. 22 O.S.1981, § 742; *Trotter v. State,* 573 P.2d 1219 (Okl.Cr.1978). Furthermore, the State must prove the *corpus delicti,* either directly or by circumstantial evidence, independent of the defendant's extrajudicial confession. *Pettigrew v. State,* 346 P.2d 957 (Okl.Cr.1959). Evidence of the abandonment and vandalism of Rasco's pickup, which the victim had been driving on the day of his disappearance, together with the items identified as having been stolen from the pickup, was clearly necessary and relevant circumstantial evidence tending to identify the appellant as one of the perpetrator's of Tony Corley's death. And, as the appellant candidly admits, both the State and the trial court complied with the provisions of *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979), concerning evidence of and instructions on other crimes.

 The appellant's next two propositions concern alleged error in overruling two motions for mistrial which were called for because of testimony the appellant characterizes as evidentiary harpoons. In both instances, appellant's objections to the testimony were sustained and the jury admonished to disregard it. Normally, such an admonition cures an error unless, after considering the evidence, the testimony appears to have determined the verdict. *Willis v. State,* 650 P.2d 873 (Okl.Cr.1982); *Kitchens v. State,* 513 P.2d 1300 (Okl.Cr. 1973). We find that, in light of the overwhelming evidence of guilt in this case, the two instances of testimony complained of did not determine the verdict. We further find that neither of the statements rise to the level of evidentiary harpoons as set out in *Bruner v. State,* 612 P.2d 1375 (Okl.Cr. 1980).[2] Neither statement complained of

---

**2.** In response to the prosecutor's question, "What occurred after the two individuals were turned over to you, sheriff?", the first witness answered, "They give them to me, and I read

Rick his rights and told him he was under arrest for kidnapping." (TR 1594) In the second instance, the prosecutor asked another witness, "Now prior to your talking with him,

appears to have been intentionally jabbed, and both were in direct response to a question asked by the prosecutor. They do not appear calculated to prejudice the appellant, nor did they in fact prejudice him. *Bruner,* supra. See *Hager,* supra. Any error created by the testimony in this trial was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1968).

The appellant's eighth proposition of error is that the admission of a photograph of the deceased taken at the murder scene some seven days after the murder was reversible error. The appellant has not included this photograph in the record on appeal. However, from the trial transcripts it appears that the photograph in question was the same photograph this Court mentioned as having some probative value in the appellant's first trial because it depicted the deceased's belt with the name "Tony" engraved upon it. *Hager,* supra. The photograph was relevant to identify the deceased as Tony Corley. During voir dire, defense counsel told the prospective jurors that they would be seeing a picture of a decomposed body, and each juror stated then that it would not influence their verdict. There was no error in the admission of this photograph.

Appellant's ninth allegation of error is that the introduction of his "patchwork" confession into evidence was cumulative and prejudicial. The trial court overruled appellant's objections stating that the confession would be relevant to the issue of the appellant's state of mind. However, because the confession contained references to other crimes, the trial court directed at an in camera hearing that objectionable portions be excised from it. There is no question raised on appeal regarding the voluntariness of the confession. The appellant states that it should not have been admitted at all because of the references to the other crimes, and it should not have been admit-

ted with the other crimes references excised because it worked a prejudicial effect upon the minds of the jurors. We fail to see how the excising of other crimes evidence from the appellant's confession has worked a prejudice to him. It would in fact work to his benefit. At any rate, this Court has stated that once a voluntary statement is admissible, it is admissible whether it proves favorable or not. *Grizzle v. State,* 559 P.2d 474 (Okl.Cr.1977). A voluntariness hearing was held in camera in accordance with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The appellant does not now contest the voluntariness or the knowledge with which his confession was given. The appellant does not show how he was prejudiced by the introduction of his confession as excised. This proposition of error is without foundation.

Appellant's tenth and eleventh propositions of error involve the testimony of a witness who was the Kay County Deputy Sheriff at the time of Tony Corley's murder. In direct response to the prosecutor's question regarding the appellant's demeanor at the time of the giving of his confession, the witness responded that it was "flippant and casual". This testimony was not objected to at trial. It was not prejudicial or inflammatory. It was relevant to the appellant's state of mind and the voluntariness of his statement. For these reasons, the testimony was properly admitted. And for that reason, the prosecutor's reiteration of the statement in closing argument was but a comment upon the evidence adduced at trial. *Tucker v. State,* 620 P.2d 1314 (Okl.Cr.1980); *Bowen,* supra.

The appellant's final proposition of error is that two comments made by the prosecutor during closing argument were so prejudicial as to necessitate a reversal of his conviction. The appellant failed to specify either of the comments in both his motion for new trial and his petition in error, and they are not properly preserved for appel-

was anything—was he advised of anything?", to which the witness responded, "Well, I started to advise him of his rights, and he stated that—I mentioned the rights that was given to him at the scene when he was arrested, and he stated that he probably knew the rights better than I did." (TR 1630).

late review. *Hawkins,* supra; *Chronister v. State,* 538 P.2d 215 (Okl.Cr.1975). Having read the State's entire closing argument, we are of the opinion that neither of the comments complained of influenced the judgment or the sentence in this case. *Kennedy v. State,* 640 P.2d 971 (Okl.Cr. 1982); *Frazier v. State,* 607 P.2d 709 (Okl. Cr.1980).

Accordingly, the judgment and sentence appealed from is AFFIRMED.

BUSSEY, P.J., and BRETT, J., concur.